NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210168-U

NO. 4-21-0168

IN THE APPELLATE COURT

FILED
July 5, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| KYDEL J. BROWN, | ) | No. 17CF479 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Roger B. Webber, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed and remanded for a preliminary *Krankel* inquiry,
concluding the trial court failed to conduct a proper inquiry when it neglected to
question trial counsel regarding defendant's claim counsel failed to investigate his
codefendant as a potential witness.

¶ 2    Defendant, Kydel J. Brown, appeals from the Champaign County circuit court's

judgment finding the appointment of new counsel was not warranted and defendant's sentence

was not excessive. Specifically, defendant argues the trial court (1) failed to conduct a proper

inquiry into one of defendant's *pro se* claims of ineffective assistance of trial counsel and

(2) abused its discretion in sentencing defendant to 38 years in prison for armed robbery in light

of his age, history, and the nature of the offense. The State concedes the trial court failed to

conduct a proper inquiry under *People v. Krankel*, 102 Ill. 2d 181 (1984), and agrees this court

should reverse and remand. We accept the State's concession and reverse and remand for a new preliminary *Krankel* inquiry.

¶ 3                                    I. BACKGROUND

¶ 4                          A. Conviction and Direct Appeal

¶ 5            This court previously discussed the underlying facts in this case on direct appeal. *People v. Brown*, 2020 IL App (4th) 180069-U, ¶¶ 6-48. Accordingly, we discuss only those facts necessary to resolve the issue presented in this appeal.

¶ 6            Following an August 2017 jury trial, defendant was found guilty of armed robbery, a Class X felony (720 ILCS 5/18-2(a)(2) (West 2016)), and sentenced to 38 years in prison. Defendant then *pro se* filed a letter with the trial court, alleging his trial counsel was ineffective for failing to call certain witnesses and object to certain evidence. Specifically, defendant alleged trial counsel failed to investigate or present testimony from Kelvin Hartfield (his codefendant), Vanishia Hunt, Veon Hunt, Kathy Barker, and Marcus Craig, all of whom could have potentially provided alibi testimony. Defendant additionally alleged trial counsel failed to object at trial to Susan Chapin's reading of witness Tierycka Wiley's prior testimony at Hartfield's trial.

¶ 7            In October 2017, the trial court conducted a *Krankel* inquiry in which neither defendant nor trial counsel were afforded an opportunity to speak about defendant's allegations, and the court determined the appointment of new defense counsel was not necessary. Defendant appealed, arguing the trial court failed to conduct a proper *Krankel* inquiry and his sentence was excessive. *Brown*, 2020 IL App (4th) 180069-U, ¶ 4. This court agreed the trial court failed to conduct a proper *Krankel* inquiry and reversed and remanded for further proceedings. *Id.* ¶ 1.

Because this court reversed and remanded, it did not address defendant's excessive sentence claim. *Id.* ¶ 66.

¶ 8                               B. Remand Hearing

¶ 9          In March 2021, the trial court conducted a new *Krankel* inquiry with a different judge presiding.

¶ 10                               1. *Defendant*

¶ 11          The court first allowed defendant to elaborate on his *pro se* allegations of ineffective assistance, and defendant reiterated his belief his trial counsel, Stephanie Corum, failed to investigate or interview five potential alibi witnesses. The court then went down defendant's list of witnesses one by one, allowing defendant to explain what testimony they could have provided. Beginning with his codefendant, Kelvin Hartfield, defendant agreed with the trial court's statement that it was defendant's belief Hartfield would have testified defendant was not present during the armed robbery. Immediately after the court's statement, it inquired about the remaining witnesses. Defendant stated Vanishia Hunt, Veon Hunt, and Marcus Craig would have testified defendant was at his own home during the time of the alleged offense and therefore could not have participated. Defendant informed Corum of these potential witnesses but claimed she failed to contact them.

¶ 12                             2. *Stephanie Corum*

¶ 13          The court then allowed Corum to respond to defendant's allegations. Corum went through several of defendant's potential witnesses and explained why she did not contact them or call them to testify.

¶ 14          Corum stated she did not call Vanishia Hunt because Vanishia had previously given a statement to police that she got home at 10:30 p.m. the night of the armed robbery and

did not see defendant at all. Because this was inconsistent with the testimony defendant believed she could provide—which was that she saw defendant come home around 11 p.m.—Corum believed Vanishia would not have been a helpful alibi witness.

¶ 15 Corum further explained she had represented Veon Hunt in a juvenile delinquency proceeding around the same time she represented defendant and, during this time, Veon indicated he "did not want to be involved" with defendant's case and that he "didn't know anything about what happened." Based on these statements, Corum did not believe he could provide useful trial testimony.

¶ 16 Regarding Marcus Craig, Corum recalled that Craig "also had made a statement to police that *** led me to believe that if he came out and said that he actually saw [defendant] between the hours of 10 p.m. and 7 a.m. that it would be contradicted by his original statement to law enforcement."

¶ 17 Corum also stated that, prior to trial, she had a conversation with defendant and the public defender's office investigator, Steve Guess, during which defendant indicated he "no longer wanted to put his family in the position of having to say things *** about his whereabouts." Corum continued, "[S]o it wasn't that the alibi defense was completely abandoned at that point[,] but he did indicate that he no longer wanted us to continue to investigate witnesses."

¶ 18 As to the claim regarding Susan Chapin's reading of Tierykah Wiley's prior testimony during defendant's trial, Corum explained as follows:

"Ms. Chapin did not testify. She merely read a transcript from [Hartfield's] trial.

We actually conducted a hearing outside the presence of the jury where Ms. Wiley came in. She—her testimony was essentially going sideways for the

State's Attorney's office. We conducted that hearing outside the presence of the jury as we were supposed to. We brought the jury back in. Ms. Wiley was then asked a series of questions by the State and then by myself. She ended up going sideways on both of us and so—and by sideways, I'm sorry, your Honor, I'm using loose language. However, she ended up testifying inconsistently with prior testimony. She was then impeached with that testimony, and in order for the jury to have more diverse voices Mr. Lozar read the questions, Ms. Chapin would respond in Ms. Wiley's voice so that the jury could have a more well-rounded impression of what was happening."

Defendant then brought up once again his concerns regarding Corum's failure to present testimony from Marcus Craig and referred the court to Craig's affidavit. Craig averred he had seen defendant before the alleged crime occurred and there "was no way he could have been present at the scene of the crime." In response, Corum stated Craig had previously given a statement to police in which he indicated he did not "know the times [defendant] was home or gone from the residence" on the evening of the alleged robbery. The court then inquired of Corum, "[S]o if I understand you[,] even if Mr. Craig would have testified at trial that [defendant] was home all night[,] that would have been impeached by his statements to police and for that reason you chose not to present it?" Corum responded affirmatively.

¶ 19    The court did not inquire of Corum as to why she did not call defendant's codefendant, Hartfield, as a witness, and Corum did not volunteer any explanation regarding that witness.

¶ 20    At the conclusion of the hearing, the court indicated it had reviewed defendant's written correspondence outlining his claims of ineffective assistance and had discussed those

claims with defendant and Corum. The court concluded Corum had presented a sound strategic decision for each alleged act of ineffective assistance. Accordingly, it concluded defendant had not raised any claim indicating Corum's possible neglect of defendant's case and therefore the appointment of counsel to pursue those claims further was not warranted.

¶ 21    This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23    On appeal, the parties agree this court should reverse and remand for further proceedings because the trial court failed to conduct a sufficient inquiry under *Krankel* when it neglected to question Corum regarding defendant's claim Kelvin Hartfield could have testified defendant did not commit the offense in this case. We agree and reverse and remand for further proceedings.

¶ 24    When a defendant *pro se* raises a posttrial claim of ineffective assistance of trial counsel, Illinois courts follow the procedure as it has evolved from *Krankel*. *People v. Ayres*, 2017 IL 120071, ¶ 11. "The trial court must conduct an adequate inquiry into allegations of ineffective assistance of counsel, that is, inquiry sufficient to determine the factual basis of the claim." *People v. Banks*, 237 Ill. 2d 154, 213 (2010). "[A] trial court's method of inquiry at a [preliminary] *Krankel* hearing is somewhat flexible." *People v. Flemming*, 2015 IL App (1st) 111925-B, ¶ 85. Ordinarily, an adequate inquiry may include "(1) questioning the trial counsel, (2) questioning the defendant, [or] (3) relying on its own knowledge of the trial counsel's performance in the trial." *People v. Peacock*, 359 Ill. App. 3d 326, 339 (2005). "[W]here alibi witnesses are concerned, a court conducting a preliminary investigation under *Krankel* ought to inquire into matters such as the identities of the witnesses, the substance of their proposed

- 6 -

testimony, and the extent to which defendant's counsel knew and acted upon the existence of such witnesses." *People v. McCarter*, 385 Ill. App. 3d 919, 942 (2008).

¶ 25      "If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. [Citation.] However, if the allegations show possible neglect of the case, new counsel should be appointed." *People v. Roddis*, 2020 IL 124352, ¶ 35 (citing *People v. Moore*, 207 Ill. 2d 68, 78 (2003)). We review *de novo* whether the trial court properly conducted a preliminary *Krankel* inquiry. *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 26      The parties agree this case is analogous to *People v. Barnes*, 364 Ill. App. 3d 888 (2006). In *Barnes*, the defendant alleged during his sentencing hearing that his trial attorneys were ineffective when they failed to provide him with transcripts he requested and did not investigate certain alibi witnesses. *Id.* at 892. Without inquiring of the defendant's attorneys, the trial court concluded the defendant's allegations were between the defendant and his attorneys, and that because "nothing was ever brought to [the court's] attention *** that work was not being done," the defendant's allegations pertained to matters of trial strategy. *Id.* at 893. On appeal, the First District held the trial court's inquiry into the defendant's allegations did not comport with *Krankel* because in its "brief conclusory review," it failed to inquire "into the substance" of the defendant's allegations and "summarily rejected" them without any inquiry into the specifics. *Id.* at 899.

¶ 27      In this case, although the trial court's inquiry was otherwise diligent, it failed to comport with *Krankel* when it did not inquire into the specifics of defendant's allegation that trial counsel failed to investigate his codefendant and obtain his trial testimony. While questioning defendant regarding his list of potential witnesses, the trial court asked defendant

just one question concerning his codefendant: "And [Kelvin Hartfield] would have testified—you believe he would have testified you were not an accomplice to the crime?" To which defendant responded, "Yes, sir." The court immediately inquired regarding the next witness without any further explanation of the contents of Hartfield's testimony or how defendant knew Hartfield would be willing to testify on defendant's behalf. Moreover, the trial court heard no response from trial counsel regarding this allegation. We emphasize that the trial judge who conducted the inquiry here was not the same judge who presided over defendant's trial, and thus, the trial court could not have concluded defendant's allegation was merely a matter of trial strategy in the absence of any explanation from trial counsel to support such a conclusion. Because the trial court's "brief conclusory review" of this particular claim fell short of the factual assessment it was required to perform, we remand for a preliminary *Krankel* inquiry into defendant's claim his counsel failed to investigate his codefendant, Kelvin Hartfield, and obtain his trial testimony. See *id.* at 899.

¶ 28       Given our reversal on the *Krankel* issue, we again decline to address defendant's excessive sentence claim as it may become moot depending upon the outcome of defendant's *Krankel* hearing. We offer no opinion on the merits of defendant's ineffective assistance of trial counsel claim.

¶ 29                                    III. CONCLUSION

¶ 30       For the reasons stated, consistent with Illinois Supreme Court Rule 23(b) (eff. Jan. 1, 2021), we reverse the trial court's judgment and remand for further proceedings.

¶ 31       Reversed and remanded.